HELEN F. HOLLY

*v.*

DAVID M. KELLOGG, JR., et al.

[Decided May 26th, 1915.]

At a sheriff's sale, properly advertised and regular in other respects, lands alleged to be worth $6,500 were sold for $93.34, under execution issued on a judgment for $254.37 recovered against the complainant widow's deceased husband in his lifetime and paramount to the dower right of the complainant, such sale being subject to another judgment having priority recovered against his heirs for $5,658.58 and costs, and the purchaser being the owner of both judgments. Upon a bill filed by the widow to annul the sheriff's deed alleging that the property was sold

for a grossly inadequate price, and the purchaser, or his father for him, was guilty of inequitable conduct, namely, "the purpose fraudulently and deceitfully to cut out" her dower right—*Held*, (1) that such allegations of the bill do not indicate fraudulent conduct on the part of the purchaser or his father; (2) that the purchaser was guilty of no fraud in procuring an assignment of the earlier judgment, he having the same right to acquire it as the complainant or anyone else, even if his motive were bad; and (3) that the bill is defective in not showing how valuable the widow's dower is.

*Mr. Samuel Koestler,* for the complainant.

*Mr. J. H. Thayer Martin,* for the defendants.

STEVENS, V. C.

This is a bill to annul a conveyance made by the sheriff of Union county to David M. Kellogg, Jr., in January last. The property, consisting of four tracts of land, was sold under execution issued on a judgment obtained in the supreme court by the National Bank of New Jersey against John J. Holly, on March 15th, 1898, for $254.37. John J. Holly died in February, 1909. The complainant is his widow, and inasmuch as he married her after the recovery of the judgment, the judgment is paramount to her dower right. The complaint is that the property was sold for a grossly inadequate price, and that David M. Kellogg, Jr., or his father for him, was guilty of inequitable conduct in the purchase; the inequitable conduct being "the purpose fraudulently and deceitfully to cut out" the complainant's dower right. The property, alleged to be worth $6,500, was sold for $93.34. This price would, no doubt, shock the conscience were it not for the fact that the property was subject to another judgment having priority, recovered in February, 1913, against Holly's heirs, for $5,658.58 damages, and $54.09 costs. Outside of the vituperative adjectives used in the bill, I fail to find any facts pointing to fraudulent conduct in the Kelloggs. They owned the larger judgment and had procured an assignment of the smaller, and they had issued execution thereunder. If execution had first issued on the bank judgment, that judgment would have been a first lien and the case would have stood differently, but execution was first issued on the subsequent judgment and

the latter had become a lien prior to the first, except on the dower right which the subsequent judgment did not touch.

Kellogg was guilty of no fraud in procuring an assignment of the first judgment. He had the same right to acquire it that complainant, or anyone else, would have had, and that, too, even if his motive were bad (*Davis* v. *Flagg, 85 N. J. Eq. 491*), of which there is no proof. He owed no duty to the complainant or her assignee. The bill does not pretend that he acted as her agent or trustee, or that he had made any representations as to how or at what time he would sell. The sale was properly advertised and in other respects regular.

The bill is, besides, defective, in that it does not show how valuable the widow's dower is. It would seem that the lots are unimproved, and if so, the value of the right would be small. The bill offers to pay the costs of the sale under the bank judgment, and if a resale is ordered, to bid a sum in excess of the costs of the resale. It seems to me that even if the case were otherwise good, the offer should be to pay the money due on the judgment.

I think the application to strike out should be granted.